UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANNA D.,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | CASE NO. 3:25-CV-5206-DWC<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court concludes that this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**I.   BACKGROUND**

Plaintiff applied for DIB on August 2, 2022. Administrative Record (AR) 31.  Her alleged date of disability onset is April 27, 2022. *Id.* Her requested hearing was held before an

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 1

1  Administrative Law Judge (ALJ) on June 12, 2024. AR 216–53. On October 3, 2024, the ALJ
2  issued a written decision finding Plaintiff not disabled. AR 28–50. The Appeals Council declined
3  Plaintiff's timely request for review making the ALJ's decision the final agency action subject to
4  judicial review. AR 1–7. On March 12, 2025, Plaintiff filed a Complaint in this Court seeking
5  judicial review of the ALJ's decision. Dkt. 1.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III. DISCUSSION

In her opening brief, Plaintiff argues the ALJ erred in (1) failing to find her obesity and left knee degenerative joint disease severe impairments at step two, (2) assessing several statements from medical sources, and (3) assessing her subjective symptom testimony. Dkt. 11.

**A.    Step Two**

At step two, the ALJ determines whether a claimant has produced evidence of one or more medically determinable impairments and whether those impairments are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found Plaintiff had several severe impairments but also had several non-severe impairments, including her left knee degenerative joint disease and obesity. *See* AR 34. Plaintiff challenges the ALJ's assessment of those two impairments. Dkt. 11 at 4–7.

"[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023)

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 2

(quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)) (emphasis in original). The Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687.

Plaintiff relies upon new evidence she submitted to the Appeals Council after the ALJ's decision. *See* Dkt. 11 at 4–7. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The Commissioner does not dispute the new evidence must be considered in this Court's evaluation of the ALJ's decision. *See* Dkt. 13.

The ALJ found Plaintiff's left knee degenerative joint disease and obesity were non-severe impairments at step two for the following reasons:

> No limiting factors have been noted in regards to these conditions. The claimant's symptoms have been treated with conservative medical management including prescription medication and various treatment notes indicate that these conditions are generally controlled [AR 930–35, 910, 709, 728, 1057]. Many of these conditions were acute and resolved promptly with care. Physical exams have been generally benign. The claimant has a normal gait and station and is able to bear full weight [AR 1038].

AR 34.

Considering the record, including the evidence submitted to the Appeals Council, the ALJ's finding that Plaintiff's left knee degenerative joint disease was non-severe is not supported by substantial evidence.

First, the ALJ's statement that there were no limiting factors related to these impairments is inaccurate. Plaintiff indicated she was limited in her walking and standing abilities (AR 423–

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 3

24), a state agency consultant opined she had some limitations in those abilities (AR 278), and treatment notes indicated she had persistent pain caused by her left knee degenerative joint disease exacerbated by some physical activities (*see* AR 192, 706, 1035–36, 1038).

Second, the new evidence reflects that, during the relevant period, Plaintiff sought injections for her condition (*see* AR 93, 194), undermining the ALJ's claim that Plaintiff had only been treated conservatively for the condition.

Third, the evidence does not suggest the condition was acute and resolved. Although some of the evidence cited by the ALJ suggests Plaintiff's knee pain was exacerbated from August 2022 through October 2022, such evidence indicates Plaintiff returned to "her chronic stable left knee baseline." *See* AR 709. This does not mean her condition had little effect on her; it means only that she returned to whatever effect it had on her before the two-month exacerbation. Further, the evidence suggests Plaintiff's condition worsened in late 2023 (*see* AR 1035–36) and does not indicate it improved thereafter.

Finally, imaging notes show Plaintiff had degenerative changes (some noted as severe or advanced) along with swelling and tenderness. *See* AR 95 ("advanced degenerative changes" in June 2024 imaging); *id.* (mild effusion on ultrasound); 192 ("x-rays do reveal degeneration of the medial compartment"); 194 (MRI results "consistent with severe osteoarthritis of patellofemoral compartment"); 744 (mild swelling and tenderness in left knee); 1042 ("L knee was visibly swollen above and below the joint."). Given this evidence, the single physical exam showing normal gait and lifting ability cited by the ALJ did not provide substantial evidence for finding Plaintiff's condition posed no more than minimal limitations in her physical functioning.

In sum, substantial evidence does not support the ALJ's finding that Plaintiff's left knee degenerative joint disease was non-severe. Because the ALJ did not otherwise consider Plaintiff's left knee impairments, this error requires reversal.

With respect to Plaintiff's obesity, the new evidence indicates Plaintiff's obesity ended during the relevant period after she underwent a weight loss program. *See* AR 65 (BMI 26, "has met her goal weight" after weight loss program). However, evidence suggests Plaintiff's obesity during the relevant period (before she underwent a weight loss program) exacerbated her knee pain. *See* AR 1038. As discussed, the evidence does not support the ALJ's finding that Plaintiff's left knee pain had no more than a minimal effect on her functioning. Further, the ALJ must consider the combined effect of impairments on Plaintiff's functioning. 20 C.F.R. § 404.1523(b)–(c). Therefore, the ALJ should reconsider the severity of Plaintiff's obesity on remand.

**B.    Medical Source Statements**

Plaintiff challenges the ALJ's assessments of the statements of Scott Hunt, PhD; Rosita Miranda, MD; and Richard Rinehard, MD. Dkt. 11 at 7–10. The ALJ found all three statements unpersuasive because they generally did not describe functional limitations and made statements on the ultimate issue of disability. *See* AR 42–43. The ALJ also found the statements were, in part, captured by the RFC assessment. *See id.*

A medical opinion is a statement about "what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations" in one or more work-related abilities. 20 C.F.R. § 404.1513(a)(2). It is distinct from a statement of symptoms or a prognosis, which fall into the category of "other medical evidence." 20 C.F.R. § 404.1513(a)(3). An ALJ need not address statements on issues reserved to the Commissioner,

even if included within a medical opinion. *See* 20 C.F.R. § 404.1520b(c). Relevant here, statements that a claimant is disabled or unable to work are statements on issues reserved to the Commissioner, *see* 20 C.F.R. § 404.1520b(c)(3)(i), as are statements that a claimant's RFC prevents them from doing their past relevant work, *id.* § 404.1520b(c)(3)(vi).

### 1. Dr. Rinehard

Dr. Rinehard submitted a letter in April 2023. AR 873. He stated Plaintiff was "considered totally disabled," described Plaintiff's symptoms, and then stated those symptoms "have [a]ffected [her] ability to function to the point she is no longer able to work." *Id.* Dr. Rinehard's statements that Plaintiff is totally disabled and unable to work are statements on issues reserved to the Commissioner, which the ALJ was not required to address. 20 C.F.R. § 404.1520b(c)(3)(i). Those statements, along with his description of Plaintiff's symptoms, also do not opine on Plaintiff's specific work-related abilities and functional limitations, so the statements are not medical opinion evidence. 20 C.F.R. § 404.1513(a)(2)–(3).

Dr. Rinehard also submitted an accommodation request in September 2022 in which he described some of Plaintiff's symptoms and indicated she required a temporary accommodation of being off work for approximately seven weeks. AR 695–98. The description of symptoms was not medical opinion evidence, *see* 20 C.F.R. § 404.1513(a)(2)–(3), and the statement that Plaintiff could not work was a statement on an issue reserved to the Commissioner that the ALJ was not required to address, *id.* § 404.1520b(c)(3)(i).

### 2. Dr. Miranda

Dr. Miranda submitted a letter in April 2023. AR 871. She described Plaintiff's migraine history, symptoms thereof, and medication history. *See id.* Such statements of symptoms and

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 6

medical history are not a functional assessment of Plaintiff's abilities and limitations, so they do not constitute portions of a medical opinion. 20 C.F.R. § 404.1513(a)(2).

Dr. Miranda also said Plaintiff's migraines "affect[] her ability to do her day-to-day tasks at work" and that stressful conditions at work "worsened her migraines and made her unable to perform her duties." AR 871. Without a description of which functional duties Plaintiff was unable to perform, however, this statement was not a medical opinion. 20 C.F.R. § 404.1513(a)(2). Further, Dr. Miranda's suggestion that Plaintiff could not perform the tasks of her past work is a statement on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(vi).

Even so, the ALJ indicated Dr. Miranda's statement was captured by the RFC: "in recognition of the effects of stress on the claimant's conditions, the undersigned has included notations in the residual functioning capacity regarding fast paced production work and predicable tasks." AR 42. Where evidence is captured by the RFC, there is no prejudicial error in failing to properly evaluate it, as it would not suggest Plaintiff was further limited than found by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion").

Because Dr. Miranda did not suggest specific limitations related to Plaintiff's stress tolerance, the ALJ was left to resolve such an ambiguity in translating her statement into the RFC. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015), and, "where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Confirming that the ALJ properly did so, the ALJ found Plaintiff could not perform the duties of her past work, as Dr. Miranda opined. AR 43.

      3.  <u>Dr. Hunt</u>

Dr. Hunt completed an accommodation request and an FMLA statement in August 2022. AR 685–93. In the accommodation request, Dr. Hunt wrote Plaintiff "may benefit from" accommodations providing work structure and "would benefit from" supervision and interpersonal communication-related accommodations. *See* AR 692. That Plaintiff would benefit from accommodations does not mean Plaintiff would have a limitation in the absence of those accommodations, nor does it speak to Plaintiff's abilities in the absence thereof. Such a statement therefore falls outside the scope of the medical opinion regulations. 20 C.F.R. § 404.1513(a)(2).

However, to the extent this statement was an opinion that Plaintiff was functionally limited, the ALJ adequately accounted for the opinion in the RFC assessment by limiting Plaintiff to occasional interaction with co-workers and supervisors, no teamwork, and predictable tasks with only occasional workplace changes. AR 37. As discussed, this renders any error in discussing this statement harmless.[1] *See Molina*, 674 F.3d at 1115.

---

[1] Plaintiff suggests in her Reply Brief that the accommodations outlined by Drs. Hunt and Rinehard mean she requires a structured work environment accommodation and that this is incompatible with performing substantial gainful activity. Dkt. 14 at 6. The import of this argument is unclear; even if the sources opined work-preclusive accommodations would be necessary (which the Court does not find they did), this would not make those statements medical opinions or mean the ALJ was required to address them. To the extent Plaintiff argues Dr. Hunt's statement is inconsistent with finding Plaintiff can perform any work, the Court disagrees. The Commissioner does not consider accommodations at step five but may include limitations reflecting accommodations in the RFC. *See* SSR 11-2p ("If an adult with an impairment(s) needs or would need greater supervision or assistance, or some other type of accommodation, because of the impairment(s) than an employee who does not have an impairment, the adult has a work-related limitation."). Plaintiff relies upon Programs Operations Manual 25020.010 for the proposition that a supported work environment is incompatible with competitive work, Dkt. 14 at 6, but that source does not discuss supported work environments; although it indicates certain abilities are essential to performing competitive work, it permits adjudicators to use their "professional judgment" in determining the extent to which the erosion of these abilities is incompatible with work. Nevertheless, POMS does not "impose[] judicially enforceable duties." *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (citing *Hermes v. Sec'y of Health & Hum. Servs.*, 926 F.2d 789, 791 n.1 (9th Cir. 1991)).

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 8

Plaintiff argues the ALJ erroneously relied upon Dr. Hunt's statement at step one while rejecting his stated need for accommodation in formulating the RFC. Dkt. 11 at 8. There is no contradiction between these findings. Step one focuses on the work Plaintiff performed; the RFC inquiry focuses on the sort of work Plaintiff can do. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1545(a)(1). At step one, the ALJ did not accept Dr. Hunt's opinion that Plaintiff would require accommodations. Rather, the ALJ relied upon the fact that Plaintiff had actually received those accommodations from the third quarter of 2022 through March 2023 in finding Plaintiff had received special conditions at work during that time, rendering her work not substantial gainful activity. *See* AR 34; 20 C.F.R. § 404.1573(c). The ALJ could consider Plaintiff's receipt of accommodations in evaluating her past work without finding those accommodations were necessary limitations in the RFC.

In his FMLA assessment, Dr. Hunt opined Plaintiff would be incapacitated for one year, *see* AR 686–87, a statement on an issue reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1520b(c)(3)(i), (iii). He described some planned medical treatment and indicated Plaintiff had anxiety and depression, *see* AR 686, but such a listing of symptoms is not medical opinion evidence, *see* 20 C.F.R. § 404.1513(a)(2).

Finally, Dr. Hunt wrote that Plaintiff could not perform "essential aspects of [her past work] including technical lab duties and interpersonal actions." AR 688. This statement was a functional assessment of Plaintiff's abilities, but it is consistent with the ALJ's determination. None of the positions identified at step five require technical lab duties (AR 45), and the RFC limited Plaintiff to performing tasks with non-complex instructions, which would likely rule out such duties (AR 37). The RFC also limited Plaintiff to performing work with no teamwork or public contact, providing for minimal interpersonal requirements. *See* AR 37. And, confirming

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 9

the RFC adequately accounted for the opinion, the ALJ found Plaintiff could not perform her past work. AR 43. The ALJ therefore reasonably accounted for this statement in the RFC.

In sum, Plaintiff has not shown reversible error in the ALJ's assessment of the statements of Drs. Hunt, Miranda, and Rinehard.

### C.     Subjective Symptom Testimony

Plaintiff raises several arguments related to her subjective symptom testimony. *See* Dkt. 11 at 10–12. The ALJ must give specific, clear, and convincing reasons for discounting Plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Plaintiff argues the ALJ erred in failing to discuss Plaintiff's testimony about the extent of her physical impairments. Dkt. 11 at 10–11. The Court agrees. Plaintiff alleged she cannot walk more than a few blocks at a time without resting. AR 424. The ALJ did not acknowledge this testimony, nor does the remainder of his discussion of Plaintiff's testimony make clear why he rejected it. *See* AR 38–40. This was erroneous. *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) ("[T]o reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

To the extent the ALJ found Plaintiff had not presented objective medical evidence of an impairment that could reasonably be expected to cause the physical symptoms she testified to, without further explanation and given the abnormal imaging results discussed herein, this was an erroneous finding. *See* SSR 16-3p ("[I]f an individual has a medically determinable impairment

established by a knee x-ray showing mild degenerative changes and he or she alleges extreme pain that limits his or her ability to stand and walk, [the ALJ] will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain."). To the extent the ALJ considered Plaintiff's testimony in making his step two finding, as discussed, the ALJ's rationale at that step was not supported by substantial evidence.

Plaintiff argues the ALJ erred in failing to discuss Plaintiff's statement that she used a cane. Dkt. 11 at 11. The use of an assistive device must be included in the RFC only if there is medical documentation establishing the need for such a device and the circumstances for which it is needed. *See* SSR 96-9p. Plaintiff has identified no evidence meeting this standard; she has referred only to the function report she completed. *See* Dkt. 11 at 11 (citing AR 424). Hence, there was no error in failing to discuss her need for an assistive device. *See Sou v. Saul*, 799 F. App'x 563, 564–65 (9th Cir. 2020) (unpublished opinion) (finding no error in ALJ not addressing cane limitation where no medical evidence met the "medical documentation . . . describing the circumstances" requirement).

Finally, Plaintiff repeats her allegations regarding the symptoms stemming from her migraines and mental impairments but raises no challenge to the ALJ's reasoning with respect to those allegations. *See* Dkt. 11 at 12–13; Dkt. 14 at 7–9.

The ALJ rejected Plaintiff's testimony about the extent of her migraines because she treated those migraines conservatively; the headaches were infrequent and resolved with medication; and the RFC included environmental limitations, like no exposure to bright lights and loud noises, which accommodated her migraines. *See* AR 40. This was a proper basis on which to reject her testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 11

regarding severity of an impairment."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citation omitted).

The ALJ found the RFC addressed much of Plaintiff's mental symptomology:

> In recognition of the effects of stress on her symptoms, notations have been included in the residual functioning capacity that the claimant is limited to predictable tasks in a non-fast paced production type environment with occasional changes. Likewise, in response to her reports that she is anxious around others and tends to isolate, notations regarding social interaction have also been included in the residual functioning capacity. Notations regarding detailed but not complex instructions are also included in the residual functioning capacity to address memory and concentration concerns.

AR 40–41. To the extent Plaintiff's testimony was inconsistent with the RFC, the ALJ rejected Plaintiff's testimony based on evidence that her symptoms stabilized with medications and a low stress lifestyle. AR 40; *Wellington*, 878 F.3d at 876; *Orn v. Astrue*, 495, F.3d 623, 639 (9th Cir. 2007) (Activities of Daily Living proper basis for rejecting testimony).

In sum, Plaintiff has shown error in the ALJ's assessment of her physical symptom testimony. Because that testimony suggests she is further limited than found in the RFC, this error requires reversal. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (error that could result in more restrictive RFC precluding gainful employment found not harmless).

## IV.   CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order. On remand, the ALJ should reassess his finding at step two of the sequential evaluation process that Plaintiff's left knee degenerative joint disease and obesity were non-severe

impairments, reassess Plaintiff's subjective testimony about her physical conditions, and, if necessary, reassess the RFC and his step five finding.

Dated this 7th day of August, 2025.

David W. Christel
United States Magistrate Judge

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 13